IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QVC, INC. | : | CIVIL ACTION |
| | : | NO. 08-3830 |
| v. | : | |
| | : | |
| MJC AMERICA, LTD. | : | |
| d/b/a SOLEUS INTERNATIONAL, INC. | : | |
| | : | |

O'NEILL, J.                                                July 18, 2011

**MEMORANDUM**

Now before me are the motions of plaintiff QVC for summary judgment on Count V of

its complaint against defendant MJC America, Ltd., d/b/a Soleus International, Inc and for

summary judgment on Counts VII, IX and XI.  For the reasons that follow, I will grant in part

and deny in part QVC's motions.

**BACKGROUND**

QVC retails a wide variety of products directly to consumers.  Soleus markets and

distributes consumer products and has been a vendor to QVC since at least August 2003.

Between February 13, 2007 and January 8, 2008, QVC issued a number of Purchase Orders to

Soleus for heaters, fans, air purifiers, dehumidifiers and watercoolers, including units of a model

number HM5-15A heater.[1]  (QVC Exs. 1 to Exs. C)  QVC sold some of the merchandise

supplied by Soleus to its customers in the ordinary course of business.  Subsequently QVC's

customers returned some of their purchases to QVC.  (QVC Ex. C to Motion on Counts VII, IX

---

[1]        In April, 2008, QVC instituted a recall of the model number HM5-15A heater
citing customer reports that some of the heaters had smoked, sparked, overheated or caught fire.

and XI at ¶ 6.)  Other merchandise remained unsold.  (QVC Ex. C to Motion on Count V at ¶ 6.)

On February 12, February 27 and March 4, 2008, QVC returned to Soleus certain merchandise

which QVC's customers had returned to QVC ("shipped customer return merchandise").  (QVC

Ex. C to Motion on Counts VII, IX and XI at ¶ 6.)  QVC did not request a refund for this

merchandise prior to shipping it back to Soleus.

   In an April 8, 2008 letter to Charley Loh, Soleus' CEO, QVC sought to invoke its alleged

rights under the Purchase Orders with respect to the shipped customer return merchandise by

demanding immediate payment of an "outstanding debit amount . . . arising from prior

transactions between the parties" – including amounts allegedly due for the shipped customer

return merchandise.  (QVC Exs. 3 to Exs. C at 4.)  Also in the letter, QVC wrote that it had

received customer reports that certain HM5-15A heaters had smoked, sparked, overheated or

caught fire; that the HM5-15A heaters failed to comply with applicable safety standards; and that

as a result QVC had stopped all sales of the HM5-15A heaters and was commencing a recall of

the product under the procedures of the U.S. Consumer Product Safety Commission.  (QVC Exs.

3 to Exs. C at 2, 4.)  QVC requested that Soleus provide it with a return authorization number

and other information to facilitate the return of both additional customer return merchandise

which QVC had in its possession ("unshipped customer return merchandise") and unsold HM5-

15A heaters that it intended to ship back to Soleus.  (Id. at 3.)  QVC requested a refund for

unshipped customer return merchandise and for unsold heaters and "request[ed] payment of all

refund amounts prior to return shipment of any and all [of the unshipped customer return

merchandise and unsold heaters] to Soleus."  (Id. at 4.)  Citing "reasonable grounds for insecurity

with respect to the ability or intention of Soleus to perform its obligations under the Purchase

Orders regarding refund of any monies due upon return and delivery of any Merchandise to Soleus," QVC also demanded adequate assurances that Soleus could and would perform as required by the Purchase Orders in the form of a payment of $508,199.02 in advance of QVC's return of the unshipped customer return merchandise and the unsold heaters.  (Id. at 5.)

As requested, Soleus provided return merchandise authorizations to QVC for the unshipped customer return merchandise and for the unsold heaters.  (Soleus Ex. A at ¶ 9.)  On March 15, 2008, Loh wrote a letter to QVC confirming that Soleus would "indemnify QVC for any claims associated with the products that Soleus International Inc. sold to QVC" and informing QVC that QVC was named as an additional insured on Soleus's $7 million product liability insurance policy.  (Soleus Ex. 2 to Ex. C at MJC00119.)  However, Soleus did not provide the requested refund to QVC for the shipped customer return merchandise, the unshipped customer return merchandise or the unsold heaters.  (QVC Ex. C to Motion on Count V at ¶ 10; QVC Ex. C to Motion on Counts VII, IX and XI at ¶ 13.)

On April 18, 2008, counsel for Soleus wrote to counsel for QVC questioning the reasonableness of QVC's decision to recall the HM5-15A heaters and noting that "based on the parties' prior course of dealing, Soleus has always accepted return merchandise, provided appropriate credit, and provided return merchandise authorizations."  (Soleus Ex. 2 to Ex. C at MJC00117.)  Soleus asserts that prior to April, 2008, when QVC had merchandise to return to Soleus it would return merchandise to Soleus pursuant to a return merchandise authorization. Soleus would then inspect and count returned merchandise and issue a credit memorandum to QVC.  QVC would issue a debit memorandum and Soleus would reconcile the two memoranda and remit any credit balance due to QVC.  (Soleus Ex. A at ¶ 2.)  Soleus also asserts that QVC's

failure to return merchandise prevented Soleus from obtaining a refund for the merchandise from

its manufacturer, Ningbo Bole Electrical Appliance Co., Ltd.[2]  (Soleus Ex. A at ¶ 11.)

On August 8, 2008, QVC filed the instant action.  In Count V of its complaint, QVC

asserts claims for breach of contract against Soleus for its alleged refusal to provide QVC with a

full refund for the amounts paid for the unsold heaters.[3]  In Counts VII, IX and XI of its

complaint, QVC asserts claims for breach of contract against Soleus for its alleged refusal to

provide QVC with a full refund for the amounts paid for the shipped and unshipped customer

return merchandise together with costs of unpacking, examining, repacking, storing, returning

and reshipping the merchandise.[4]

The Purchase Orders relevant to QVC's claims – numbered 526487, 526488, 533029,

533103, 550957, 559089, 561074 and 567520 – contain uniform terms and conditions and

include provisions for QVC's return of merchandise to Soleus in the event merchandise is

returned by its customers or is unsold.[5]  Section 7 of the Purchase Orders sets forth QVC's rights

---

[2]       I note that Soleus has not cited any language in the Purchase Orders that would
condition Soleus's obligation to provide a refund to QVC on its ability to obtain a refund from
Ningbo Bole.

[3]       QVC's complaint refers to the unsold heaters as SRV24882 Merchandise.
(Compl. ¶¶ 44, 78.)

[4]       QVC refers to the merchandise in Count VII of its complaint as Customer Return
V24882 Merchandise.  (Compl. ¶¶ 45, 81, 83.)  The Customer Return V24882 Merchandise
encompasses both shipped and unshipped units.  Count IX of QVC's complaint pertains to
shipped customer return merchandise.  QVC refers to the merchandise covered by Count IX as
the additional customer return merchandise.  (Compl. ¶¶ 48, 89.)  Count XI of QVC's complaint
pertains to unshipped customer return merchandise which QVC refers to as the V25162
Customer Return Merchandise.  (Compl. ¶¶ 50, 98.)

[5]       On June 3, 2011, QVC requested that the Clerk of Court replace the copies of the
terms and conditions originally attached as Exhibit 2 to Exhibit C to each of QVC's motions for

with respect to returned merchandise as follows, in relevant part:

> Merchandise furnished hereunder which is not in compliance with the Laws this Order [sic], the Regulations or the Standards, which is returned by any of Buyer's customers for any reason, which fails to meet Buyer's quality control tests, which fails to meet Buyer's carrier's quality, drop or other tests, or which is or may be used in conjunction with merchandise furnished and rejected (or acceptance thereof revoked under this Order or another order, may be rejected (or acceptance thereof revoked) at Buyer's option and returned to Vendor.  All expense of unpacking, examining, repacking, storing, returning and reshipping any Merchandise rejected (or acceptance of which has been revoked) as aforesaid shall be at Vendor's expense and risk.  With respect to such returned Merchandise or identical merchandise purchased under a separate purchase order, <u>Buyer shall, at its option, receive a credit or refund</u> equal to the average cost of amounts paid by Buyer for each item of such Merchandise, or other identical merchandise, including, without limitation, in-bound freight charges (notwithstanding contrary Freight Terms, if any, set forth on the face hereof).  In the event that Buyer shall opt to receive a refund, Vendor shall pay Buyer in immediately available funds within fifteen (15) days of Buyer's request.  <u>Buyer reserves the right to require full refund prior to the return of Merchandise.</u>  In the event that Buyer shall opt to receive a credit, Buyer may apply such credit toward any amounts due or which may become due to Vendor. . . .  <u>Authorization is expressly granted to Buyer to return Merchandise without additional authorization, and Vendor hereby agrees to accept such returns even without Buyer's request for return authorization labels.</u>  Merchandise returned or rejected by Buyer is not to be replaced by Vendor without the prior written approval of Vendor.  Vendor acknowledges that Buyer does not

---

summary judgment (the Affidavit of Alan Kujawa) with copies of a set of terms and conditions containing different language.  QVC provided no explanation for the substitution and did not request to amend its briefs in light of the revised language in the Purchase Orders.  Neither the original nor the substituted exhibits were dated and neither the original nor the substituted terms and conditions include references to Purchase Order numbers.  However, the substituted terms and conditions appear to mirror the terms and conditions attached to each of the Purchase Orders included as Exhibit 1 to Exhibit C to each of QVC's motions for summary judgment (the Affidavits of Alan Kujawa).  Absent an objection from Soleus with respect to QVC's requests for substitution, I look to the language included in the substituted terms and conditions in making my decision.

> inspect each item at receipt of Merchandise and that defects, imperfections or nonconformity with any representations, warranties or covenants set forth herein may not be discovered by Buyer until Merchandise shall have been purchased by its customers and returned to Buyer.  Buyer's inspection, discovery of a breach of warranty, failure to make an inspection or failure to discover a breach of warranty shall not constitute a waiver of any of Buyer's rights or remedies whatsoever.

(QVC Substituted Exs. 2 to Exs. C at ¶ 7 (emphasis added).)

Section 8 of the Purchase Orders obligates Soleus to accept a return of up to a specified percentage of the aggregate number of units acquired by QVC but not sold in the ordinary course of business.  (QVC Substituted Exs. 2 to Exs. C at ¶ 8.)  It provides, in relevant part:

> If a percentage greater than zero is indicated in the "Sale or Return" designation on the face hereof, then this is a "sale or return" transaction as defined in the Uniform Commercial Code as enacted in Pennsylvania, 13 Pa. C.S. Division 2.  In addition to its right to return Merchandise as provided elsewhere in this Order, Buyer may return to Vendor, for credit or cash, at Buyer's option, all or any portion of the following: (a) with respect to "sale or return" transactions only, any Merchandise which is not sold by Buyer up to the percentage indicated in the "Sale or Return" designation on the face hereof (based on the aggregate amount of this Order) within sixty (60) days after remittance of the Subsequent Payment (as also defined in Section 12 herein) or, if no Subsequent Payment, within one hundred and eighty (180) days after remittance of Buyer's Initial payment to Vendor (as defined in Section 12 herein); and (b) with respect to all transactions, any Merchandise which has been sold to and then returned by customers at any time.  The expenses incident to the return of Merchandise to Vendor under the foregoing clause (b) shall be paid or reimbursed by Vendor in accordance with Section 7 of this Order.  Buyer is not obligated to pay for any Merchandise returned to Vendor and is therefore entitled to an immediate and full refund of any and all monies previously paid to Vendor on account of such returned Merchandise.  If Vendor fails or refuses to make arrangements for the return of Merchandise satisfactory to Buyer within five (5) days of receipt of Buyer's request for return authorization, if any, Buyer may make such arrangements on

> Vendor's behalf and at Vendor's risk and expense. . . . The rights
> of Buyer set forth in this Section are in addition to, and not in lieu
> of, any and all other rights and remedies available to Buyer
> pursuant to this Order, applicable law or in equity.

(Id. (emphasis added).)  Relevant to QVC's claims under Section 8, Purchase Order 550957,

which sets forth an order of 5,952 units of a black model number HM5-15A heater and 21,048

units of a charcoal model number HM5-15A heater, states that it provides for "50% Sale or

Return."  (QVC Ex. 1 to Ex. C to Motion on Counts VII, IX and XI.)

Section 15 of the terms and conditions provides that each Purchase Order "shall be

governed by the laws of the Commonwealth of Pennsylvania applicable to contracts to be

performed wholly therein, regardless of the place of acceptance."  (QVC Substituted Exs. 2 to

Exs. C at ¶ 15.)  The terms and conditions also contain a no waiver provision, stating that

> [n]o waiver by Buyer of any term, provision or condition hereof
> shall be deemed to constitute a waiver of any other term, provision
> or condition of this Order, or a waiver of the same or of any other
> term, provision or condition with regard to subsequent transactions
> or subsequent parts of the same transaction, including without
> limitation, subsequent shipments under this Order.

(Id. at ¶ 16.)  The Purchase Orders also include an integration clause: "[t]his Order and any other

written warranties and specifications, the Regulations and Standards, and the terms, conditions

and agreements herein and therein, constitute the full understanding of the parties hereto and a

complete and exclusive statement of the terms of the parties' agreement concerning the

Merchandise furnished hereunder."  (Id. at ¶ 19.)  The terms and conditions further provide that

acceptance of each Purchase Order is effectuated by shipment of conforming merchandise:

> THIS PURCHASE ORDER ('ORDER') IS EXPRESSLY
> CONDITIONED ON ACCEPTANCE OF THE TERMS AND
> CONDITIONS HEREOF.  Oral or written notice of acceptance by

> Vendor and/or shipment of all or any part of the merchandise
> specified in this Order ('Merchandise') shall constitute acceptance
> by vendor of the terms and conditions contained herein.

(Id. at Preamble.)  Soleus delivered to QVC some or all of the merchandise ordered in each of the

Purchase Orders.  (QVC Ex. C to Motion on Count V at ¶ 5; QVC Ex. C to Motion on Counts

VII, IX and XI at ¶ 5.)

## STANDARD OF REVIEW

The party moving for summary judgment has the burden of demonstrating that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  If the

movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a

genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to

a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under

governing law.  Id.  The "existence of disputed issues of material fact should be ascertained by

resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor

Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including
> depositions, documents, electronically stored information,
> affidavits or declarations, stipulations (including those made for
> purposes of the motion only), admissions, interrogatory answers, or
> other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

-8-

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### DISCUSSION

To withstand QVC's motions for summary judgment on its claims for breach of contract Soleus must demonstrate the existence of a genuine issue of material fact as to one or more of the following: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages.  Harry Miller Corp. v. Mancuso Chems. Ltd., 469 F. Supp. 2d 303, 322 (E.D. Pa. 2007), citing Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 884 (Pa. Super. Ct. 2000).  In its response to QVC's motions Soleus contends that genuine issues of material fact remain regarding the terms of the parties' agreement because based on the parties' course of conduct QVC was required to return merchandise to Soleus as a condition precedent for any refund.  (Soleus Opp. Mem. at 4.)  Soleus also argues that genuine issues of material fact remain with respect to QVC's damages because it has made shifting representations regarding the number of units of merchandise it seeks to return.  (Id. at 5.)

### I.    Soleus's Liability for Customer Return Merchandise

Section 7 clearly provides that merchandise "which is returned by any of Buyer's customers for any reason . . . may be rejected (or acceptance thereof revoked) at Buyer's option

and returned to Vendor." (QVC Substituted Exs. 2 to Exs. C at ¶ 7.) The plain language of Section 7 also clearly provides QVC with an option to request a refund, rather than a credit, for merchandise returned by its customers: "Buyer shall, at its option, receive a credit or refund . . . ." (Id.) Cf. QVC, Inc. v. Starad Inc., No. 03-5295, 2005 WL 742500, at *12 n.69 (E.D. Pa. Mar. 31, 2005) (finding that "QVC's right to return [merchandise] for credit (or cash, at QVC's option) was a right specifically spelled out by QVC's Purchase Orders, which did not impose any conditions on QVC's choice of remedies") (emphasis in original). Further, Soleus has admitted that it is obligated to reimburse QVC for customer return merchandise:

> Q.  Mr. Loh, we've talked about the customer returns. My question to you is, with respect to units that are returned to QVC and QVC then returns to Soleus, and assuming the accounting is correct, would you agree that QVC is entitled to a refund of the cost price of the returns? . . .
>
> The cost price would be the price that QVC paid to Soleus for each unit that is then returned by the customer. Would you agree with me that in accordance with the purchase order provisions, QVC is entitled to a refund of its cost price paid to Soleus for the unit?
>
> A.  Yes.

(QVC Ex. D to Motion on Counts VII, IX and XI at 124:16-125:8.) The admission of Soleus's corporate designee is binding on Soleus. Fed. R. Civ. P. 30(b)(6).

## A.    Shipped Customer Return Merchandise

Given Soleus's admission regarding its obligation to refund QVC for customer return merchandise, Soleus has no defense for its failure to provide QVC with a refund for the shipped customer return merchandise. Under the unambiguous language of the Purchase Orders, once QVC informed Soleus that it intended to exercise its option to receive a refund under Section 7

of the Purchase Orders, Soleus was obligated to "pay [QVC] in immediately available funds

within fifteen (15) days . . . ." (QVC Substituted Exs. 2 to Exs. C at ¶ 7.) Soleus' obligation to

provide QVC with a refund is "presented in clear, mandatory terms." Mextel, Inc. v.

Air-Shields, Inc., No. 01-7308, 2005 WL 226112, at *29 (E.D. Pa. Jan. 31, 2005), citing PBS

Coals, Inc. v. Barnham Coal Co., 558 A.2d 562, 564 (Pa. Super. Ct. 1989) ("In determining the

intent of parties to a written agreement, the court looks to what they have clearly expressed, for

the law does not assume that the language of the contract was chosen carelessly."). There is no

question that in failing to provide QVC with its requested refund, Soleus has breached its

obligation under Section 7 of the Purchase Orders with respect to the shipped customer return

merchandise.

Further, Soleus has been in possession of the shipped customer return merchandise since

at least March 2008 and has had ample opportunity to inspect and count the customer return

merchandise so that it could determine the amount of the refund owed to QVC. Soleus has not

set forth any evidence to rebut the evidence contained in the affidavit of Alan T. Kujawa that

QVC returned to Soleus 6804 units of merchandise, including 4,284 units of the HM5-15A

heater, with a total extended cost price of $277,303.26 and that the return expenses for the

shipped customer return merchandise total $7,050.49. (QVC Ex. C to Motion on Count V at

¶¶ 17-18.) Accordingly, I will enter summary judgment in QVC's favor with respect to its claim

for breach of contract for the shipped customer return merchandise and will award damages to

QVC in the amount of $284,353.75.

**B.    Unshipped Customer Return Merchandise**

In defense of its failure to provide QVC with a refund for the unshipped customer return

merchandise, Soleus asserts that it was not obligated to provide QVC with a refund prior to

QVC's return of the merchandise to Soleus.  Soleus contends that: (1) I must look to the prior

course of dealing between Soleus and QVC in determining the terms of the agreement between

them; and (2) their prior course of dealing establishes that QVC was obligated to return

merchandise to Soleus prior to Soleus's issuance of any refund for returned merchandise.  I

disagree with both contentions.

First, Section 7 of the Purchase Orders unambiguously provides that "Buyer reserves the

right to require full refund <u>prior to the return</u> of Merchandise."  (QVC Substituted Exs. 2 to Exs.

C at ¶ 7 (emphasis added).)  "Because the language of the Agreement is clear and unambiguous,

the Court need not resort to extrinsic evidence to interpret" Section 7.  <u>Mextel</u>, 2005 WL 226112,

at *29, <u>citing</u> <u>Sabad v. Fessenden</u>, 825 A.2d 682, 688 (Pa. Super. Ct. 2003).

Further, "[p]arol evidence cannot be used to contradict the provisions of [a written,

integrated] contract."  <u>AstenJohnson, Inc. v. Columbia Cas. Co.</u>, 562 F.3d 213, 220 (3d Cir.

2009); <u>see also</u> <u>Matlock Rental Co., Inc. v. Lift-All</u>, No. 97-2786, 1998 WL 631974, at *3 (E.D.

Pa. Aug. 27, 1998), <u>citing</u> <u>Sundlun v. Shoemaker</u>, 617 A.2d 1330 (Pa. Super. Ct. 1992)

("Pennsylvania law . . . permits evidence extrinsic to the written contract which arguably

complements, rather than contradicts, terms used in the contract.").  In accordance with Section

19, the parties intended the Purchase Orders to be the complete and exclusive statement of the

terms of their agreement.  (QVC Substituted Exs. 2 to Exs. C at ¶ 19.)  "Where a writing was

intended as "a complete and exclusive statement of the terms of the agreement," it "may be

explained or supplemented . . . by course of performance, course of dealing, or usage of trade

. . . ."  13 Pa. Cons. Stat. Ann. § 2202.  However, "[c]ourse of dealing . . . should not be

-12-

permitted to be used as a 'bootstrap' to avoid the stricter provisions of the parol evidence rule for complete and exclusive writings."  Precision Printing Co., Inc. v. Unisource Worldwide, Inc., 993 F. Supp 338, 355 n.15 (W.D. Pa. 1998).  Soleus's contention that it was not obligated to prepay QVC's refund for the unshipped customer return merchandise clearly contradicts the unambiguous language in Section 7 of the Purchase Orders reserving QVC's right to require a full refund prior to the return of the unshipped customer return merchandise.

Second, Soleus has not presented any evidence that QVC had previously elected to exercise its option under the Purchase Orders to obtain a refund instead of a credit.  Accordingly, the parties' prior conduct cannot be used to explain how Soleus should have performed when QVC first elected to exercise its option for a refund under Section 7.  Further, the no waiver provision set forth in Section 16 of the Purchase Orders clearly establishes that QVC did not waive its option to request a refund for returned merchandise in lieu of a credit simply by choosing to opt for a credit and not a refund in its previous return transactions.  (QVC Substituted Exs. 2 to Exs. C at ¶ 16.)  In failing to provide QVC with its requested refund for the unshipped customer return merchandise, Soleus has breached its obligation under Section 7 of the Purchase Orders.  Accordingly, I will grant summary judgment in QVC's favor on the question of liability for the unshipped customer return merchandise.

However, I find that a question of material fact remains as to the number of units of unshipped customer return merchandise.  As Soleus argues, QVC has made inconsistent representations concerning the number of unshipped customer return units.  In QVC's April 8 letter to Soleus, it represented that it was rejecting acceptance of "no less than 1453 units of the [HM5-15A heater] that had been sold by QVC to its retail customers and subsequently returned

to QVC by such customers."  (QVC Exs. 3 to Exs. C at 4.)  The letter did not reference other

unshipped customer return merchandise.  Id.  In its complaint, QVC stated that it had in its

possession "no less than 1,155 units of the [HM5-15A heater] that had been sold by Plaintiff to

its retail customers and subsequently returned to Plaintiff by such customers " and also that it had

"in its possession a further quantity of [a SoleusAir Micathermic Ultra Thin Portable Heater] sold

by Plaintiff but thereafter returned to Plaintiff by its retail customers consisting of no less than

755 units . . . ."  (Compl. at ¶¶ 29, 50.)  In a September 4, 2009 letter, counsel for QVC noted

that "[o]f the 10,717 heaters in Frozen Warehouse Status, approximately 7,991 were never sold

to or returned by customers," suggesting that 2,726 units still in QVC's possession had been sold

to customers and returned to QVC.  (Soleus Ex. D. at 2.)  Finally, the affidavit of Alan T. Kujawa

identifies a total of 2,983 units of unshipped customer return merchandise.  Given the

inconsistencies in these numbers, I find that QVC's damages with respect to the unshipped

customer return merchandise are an issue of fact for the jury.[6]

## III.   Soleus's Liability for Unsold Heaters

Soleus has admitted that QVC was entitled to return the unsold heaters, but objects to

QVC's demand that it refund the purchase price of the unsold heaters prior to QVC's return of

the heaters to Soleus:

> Q.     So in the case of QVC's request that Soleus pay the refund

_____

[6]       Genuine issues with respect to the amount of damages may be reserved for trial
after a summary judgment on liability.  See Fed. R. Civ. P. 56(g) ("If the court does not grant all
the relief requested by the motion, it may enter an order stating any material fact – including an
item of damages or other relief – that is not genuinely in dispute and treating the fact as
established in the case."); see also NCN Lending, LLC v. Cook, No. H-10-483, 2010 WL
5146600, at *5 (S.D. Tex., Dec. 13, 2010) (granting plaintiff's motion for summary judgment as
to liability but denying the motion as to damages).

> amount before shipping the goods back to Soleus, do you dispute QVC's right to return the goods or just the demand for the refund up front?
>
> A.   We never refuse to accept a return, but we cannot honor their demand for prepayment for goods we have not even seen . . . .

(QVC Ex. D to Motion on Count V at 126:8-126:14.)  Both Sections 7 and 8 of the Purchase Orders provide possible grounds for Soleus to refund QVC for certain unsold heaters.

### A.   Soleus' Liability for Unsold Heaters Under Section 7

In addition to providing QVC with a mechanism for obtaining a refund for merchandise returned by its customers, Section 7 also provides that merchandise "which is not in compliance with the Laws this Order [sic], the Regulations or the Standards, . . . which fails to meet Buyer's quality control tests, [or] which fails to meet Buyer's carrier's quality, drop or other tests . . . may be rejected (or acceptance thereof revoked) at Buyer's option and returned to Vendor."  (QVC Substituted Exs. 2 to Exs. C at ¶ 7.)  In its complaint, QVC has alleged that the V24882 Merchandise, which includes the unsold heaters, "fails to satisfy the implied warranties under Pennsylvania law, the express warranties, representations and covenants set forth in Section 3 of the Purchase Orders and or Plaintiff's Standards (as referenced and incorporated in the Purchase Orders).  (Compl. ¶ 27.)  If true, QVC would have been entitled to return the unsold heaters to Soleus pursuant to Section 7 of the Purchase Orders and would have had a right to "require full refund prior to the return of" the unsold heaters under the plain language of the Purchase Orders. (QVC Substituted Exs. 2 to Exs. C at ¶ 7.)  However, the parties dispute whether the unsold heaters would meet the relevant requirements of Section 7, including whether the unsold heaters were not in compliance with relevant laws, warranties, representations or applicable standards

provided by QVC to Soleus.[7]  Accordingly, I find that there is a material question of fact as to whether the unsold heaters could be returned to Soleus under Section 7 of the Purchase Orders. If a jury finds that the unsold heaters could have been returned to Soleus under Section 7, then Soleus breached its obligations to QVC under Section 7 with respect to the unsold heaters in failing to prepay QVC's requested refund for the unsold heaters.

**B.      Soleus' Liability for Unsold Heaters Under Section 8**

Section 8 of the Purchase Orders provides a second mechanism for the return of the unsold heaters, allowing for the return of "any Merchandise which is not sold by buyer up to the percentage indicated in the 'Sale or Return' designation on the face hereof . . . ."  (QVC Substituted Exs. 2 to Exs. C at ¶ 8.).  Unlike Section 7 of the Purchase Orders, Section 8 does not include a provision explicitly reserving QVC's right to require a full refund prior to the return of merchandise.  Instead, Section 8 of the Purchase Orders provides that "Buyer is not obligated to pay for any Merchandise <u>returned</u> to Vendor and is therefore entitled to an immediate and full refund of any and all monies previously paid to Vendor on account of such <u>returned</u> Merchandise."  (QVC Substituted Exs. 2 to Exs. C at ¶ 8 (emphasis added).)  Section 8 further provides that if Soleus "fails or refuses to accept any <u>returned</u> Merchandise and/or fails to remit such refund to Buyer in a timely manner and in accordance with the terms of this Order, Buyer may . . . take such other action as it may deem necessary or desirable to recover the monies owed

---

[7]      QVC has not moved for summary judgment with respect to Count I of its complaint in which it seeks entry of a declaratory judgment that, inter alia, "the subject V24882 Merchandise fails to satisfy the implied warranties under Pennsylvania law, the express warranties, representations and covenants set forth in Section 3 of both PO 550957 and PO 567520, and Plaintiff's standards (as referenced and incorporated in both PO 550957 and PO 567520)[.]" (Compl. at 16.)

by Vendor."  Id.  I find that under the plain language of Section 8, Soleus was not required to

provide a refund to QVC until it returned the unsold heaters to Soleus.  Because QVC did not

return the unsold heaters to Soleus, QVC did not trigger Soleus's obligation to provide it with a

refund under Section 8.

### C.      Soleus's Obligation to Provide Adequate Assurances

Because I find that Section 8 of Purchase Orders did not give QVC the right to demand

payment prior to relinquishing custody of the unsold heaters to Soleus, I will consider QVC's

argument that QVC was permitted to demand pre-payment from Soleus as a form of adequate

assurances of Soleus's performance in accordance with Section 4 of the relevant Purchase Orders

and in accordance with 13 Pa. Cons. Stat. Ann. § 2609(a).  Under Section 4 of the Purchase

Orders, when QVC provides Soleus with notice of a claim, Soleus is obligated to "provide

prompt assurance, to [QVC's] reasonable satisfaction, of [Soleus's] ability to[ ] indemnify

[QVC] . . . ."  (QVC Exs. 2 to Exs. C at ¶ 4 (brackets in original).)  Section 2609(a) provides that

"[w]hen reasonable grounds for insecurity arise with respect to the performance of either party

the other may in writing demand adequate assurance of due performance and until he receives

such assurance may if commercially reasonable suspend any performance for which he has not

already received the agreed return."  13 Pa. Cons. Stat. Ann. § 2609(a).

Soleus attempted to confirm its willingness and ability to satisfy its indemnification

obligations in its March 15, 2008 letter to QVC.  (Soleus Ex. 2 to Ex. C at MJC001119.)

Whether Soleus's letter constituted sufficient assurances of its ability to indemnify QVC under

Section 4 of the Purchase Orders and/or sufficient assurances of its ability to provide the

requested under Section 2609(a) are issues of material fact that should be left to the jury.

Likewise, I find that whether QVC had "reasonable grounds for insecurity" under Section 2609(a) with respect to Soleus's willingness and ability to pay for the unsold heaters is a question of fact for the jury.  See Nowicki v. United Timber Co., No. 99-257, 2000 WL 1239966, at *4 (E.D. Pa. Aug. 31, 2000) ("Whether the plaintiffs did provide adequate assurances so as to avoid repudiating the contract is a question of disputed material fact that is better left for the jury to decide."); Lance Int'l Ltd. v. Menominee Paper Co., No 98-2229, 1999 WL 482317, at *6 (E.D. Pa. July 9, 1999) ("[A] question of fact is presented as to whether the request for adequate assurances was proper and reasonable under the circumstances."); Personnel Data Sys. v. Grand Casinos, No. 97-4896, 1998 WL 437268, at *6 (E.D. Pa. July 30, 1998) ("demand for adequate assurances under the UCC presents an issue of fact that cannot be decided on summary judgment"); see also Brisbin v. Superior Valve Co., 398 F.3d 279, 285-86 (3d Cir. 2009) (finding that a trial court's conclusions on adequate assurance under Section 2609(a) "are generally questions of fact" but noting that a conclusion on adequate assurance as a matter of law might be allowed in instances of clearly egregious or innocuous conduct).  Accordingly, I will deny QVC's motion for summary judgment with respect to the unsold heaters.

## IV.    Liability for Prejudgment Interest

Under Pennsylvania law, a plaintiff is entitled to interest on money owed under contract as a matter of legal right beginning when an obligation to pay arises.  See Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988) (holding the prevailing party's "right to interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment."); see also Restatement of Contracts § 337(a).  "The basic premise underlying the award of prejudgment interest to a party centers on the fact that the breaching party has deprived the

injured party of using interest accrued on money which was rightfully due and owing to the injured party." Widmer Eng'g, Inc. v. Dufalla, 837 A.2d 459, 469 (Pa. Super. Ct. 2003). Because I find that Soleus breached its contract with respect to the shipped and unshipped customer merchandise, I also find it liable for prejudgment interest with respect to the amounts due and owing for QVC's return of the shipped and unshipped customer return merchandise.

QVC's right to interest for its damages for the shipped and unshipped customer merchandise arose when it demanded a refund on April 8, 2008. Accordingly, I find that Soleus is liable for $55,667.34 in prejudgment interest for the shipped customer return merchandise.[8] I withhold judgment as to the amount of prejudgment interest owed with respect to the unshipped customer return merchandise because QVC's damages with respect to such merchandise have yet to be fixed. "There is no requirement that damages must be liquidated in order to receive prejudgment interest, and there is also no exception to a party's right to prejudgment interest simply because the amount of damages must be determined at trial." Eastern Elec. Corp. of N.J. v. Shoemaker Const. Co., 657 F. Supp. 2d 545, 561 (E.D. Pa. 2009), citing Spang & Co. v. USX Corp., 599 A.2d 978, 984 (Pa. Super. Ct. 1991).

---

[8]      From April 8, 2008 (the date of QVC's demand for a refund) through July 12, 2011 (the date of the Court's judgment), 1191 days elapsed. Because it does not appear that the parties have by contract determined otherwise prejudgment interest is calculated at the statutory rate of 6 percent per annum. 41 P.S. § 202 and 42 Pa. Cons. Stat. Ann.§ 8101. Accordingly, QVC is entitled to 1190 days worth of interest at 6 percent and the prejudgment interest award of 55,620.60 is derived as follows:

6% per year x $284,353.75 = $17,061.23 per year

$17,061.23 per year / 365 days = $46.74 per day

$46.74 per day x 1191 days = $55,667.34

-19-

**V.      Liability for Attorneys' Fees**

Section 4 of the Purchase Orders provides, in relevant part, that:

> Vendor hereby agrees to protect, defend, hold harmless and
> indemnify Buyer . . . from and against any and all claims, actions,
> suits, costs, liabilities, damages and expenses (including, but not
> limited to, all direct, special incidental, exemplary and
> consequential damages and losses of any kind [including without
> limitation, present and prospective lost profits and lost business]
> and reasonable attorneys' fees based upon or resulting from . . . (d)
> breach by Vendor of any representations, warranties or covenants .
> . . ."

(QVC Exs. 2 to Exs. C at ¶ 4 (brackets in original).)  Because I find that Soleus has breached its

obligations under Section 7 of the Purchase Orders with respect to the shipped and unshipped

customer return merchandise, I find that Soleus is liable for QVC's reasonable attorney's fees

resulting from such breach.  Accordingly, I will direct QVC to submit an application of

reasonable attorneys' fees incurred in prosecuting its claims with respect to the shipped and

unshipped customer return merchandise.

An appropriate Order follows.