IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QVC, INC. | : | CIVIL ACTION |
| | : | NO. 08-3830 |
| v. | : | |
| | : | |
| MJC AMERICA, LTD. | : | |
| d/b/a SOLEUS INTERNATIONAL, INC. | : | |
| | : | |

O'NEILL, J.                                                                                  January 4, 2012

## MEMORANDUM

Plaintiff and counterclaim-defendant QVC, Inc. moves to exclude certain opinion testimony of Harry Ehrlich, a liability expert proffered by defendant and counterclaim-plaintiff MJC America, Ltd., d/b/a Soleus International, Inc. QVC contends that certain of Ehrlich's opinions and testimony do not satisfy the requisites of Rule 702 of the Federal Rules of Evidence and/or the standards set forth in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and its progeny. For the reasons that follow, I will grant in part and deny in part QVC's motion.

### BACKGROUND[1]

Among QVC's claims against Soleus is a claim seeking to recover costs and damages allegedly attributable to QVC's voluntary recall of 19,000 SoleusAir model HM5-15A-32 space heaters. After receiving customer reports that certain heaters distributed by Soleus had emitted smoke and sparks, overheated, melted and/or caught fire, QVC implemented a voluntary recall of the heaters. The purchase orders for the heaters provided that:

>   In the event [QVC] reasonably determines that any Merchandise

---

[1]    This case is to be tried as a bench trial.

> sold by [QVC] to its customers contains any defect, [QVC] may, in
> its sole discretion (taking into account [QVC's] standards for
> customer satisfaction), subject to applicable law, determine
> whether [to conduct] a voluntary recall or other action (including
> the determination as to whether [QVC's] customers will be offered
> a replacement item of Merchandise or a refund of their purchase
> price and shipping and handling charges).

Compl. ¶ 20. QVC asserts that it reasonably determined that the heaters were defective and that it properly exercised its discretion to recall them. Compl. ¶ 32. Soleus contends that QVC's recall of the heaters was unreasonable. Dkt. No. 71 at 2.

Soleus retained Ehrlich to review QVC's decision to recall the heaters. Ehrlich submits that he is an engineer with expertise in "industrial and manufacturing areas, human factors, product design, equipment design, [and] warnings." Dkt. No. 68-3 at 7:13-15; 127:7-13. Ehrlich has experience in the investigation of product failures. Dkt. 68-2 at 11.[2] His past experience also includes responsibility for quality control, manufacturing processes, and compliance with Underwriters Laboratory standards. Id. He considers himself to be an expert in manufacturing processes that involve the crimping of electrified wires within consumer appliances including humidifiers, vaporizers, heating pads, coffee makers and convection ovens. Dkt. No. 68-3 at 15:6-16:23.

Ehrlich has submitted two expert reports, dated January 11, 2011 and February 25, 2011. In his reports, he concludes, *inter alia*, that "the cause of overheating is attributed to an isolated condition related to the crimping of wires," Dkt. No. 68-1 at 8, and that "a loose crimp connection was responsible for the failure." Dkt. No. 68-2 at 2. Ehrlich's reports also criticize

---

[2] Because Ehrlich's CV does not include page numbers, this reference is to page numbers generated by the electronic case filing system.

the rigor of QVC's investigation into possible defects in the heaters. His reports ultimately conclude that QVC's recall decision had "no basis," was "arbitrary," "not justified" and "not substantiated"; and that QVC had no "right" to issue the recall, Dkt. No. 68-1 at 13, Dkt. No. 68-3 at 29:21-23; 78:7-12; and that QVC's recall failed to "comport with the [Consumer Product Safety Commission] requirements for a product safety recall." Dkt. No. 68-2 at 5. QVC contends that these conclusions are improper legal opinions and seeks to exclude them. QVC also asserts that Ehrlich lacks the requisite specialized knowledge to offer his opinion that QVC's recall decision was not reasonable because the recall decision was overbroad in scope and premature. Dkt. No. 68-1 at 12-13. QVC further contends that Ehrlich lacks the requisite expertise to render an opinion that the defects present in the heaters were "not statistically significant" and constituted "an isolated problem." Id. at 11-12.

## LEGAL STANDARD

Expert testimony may not be admitted at trial unless the proffered testimony is "not only relevant, but reliable." Daubert, 509 U.S. at 589, see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999) (holding that a district court's "gate keeping obligation" under Daubert and Rule 702 applies to "all experts, not just to 'scientific ones'"). Rule 702 of the Federal Rules of Evidence governs the admissibility of expert opinion testimony at trial and provides that

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> methods, and (3) the witness has applied the principles and
> methods reliably to the facts of this case.

Fed. R. Evid. 702. Rule 702 thus mandates "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). The party offering the expert testimony has the burden of establishing that the proffered testimony meets each of the three requirements by a preponderance of the evidence. Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 418 (3d Cir. 1999).

## DISCUSSION

I.  **Legal Conclusions**

One disputed issue to be determined at trial is whether, under Section 5 of the purchase orders, QVC reasonably determined that the heaters contained any defect. If so, QVC, in its sole discretion, had the right under the terms of its contract with Soleus to determine whether to proceed with a recall, taking into account QVC's standards for customer satisfaction. In the context of this dispute, Ehrlich's opinions as to the reasonableness of QVC's determination that the heaters were defective serve to do nothing more than inform the factfinder what result it should reach. Expert testimony that "merely tells the [factfinder] what result to reach is improper." Burger v. Mays, 176 F.R.D. 153, 156 (E.D. Pa. 1997) (alterations omitted), citing Fed. R. Evid. 704, advisory committee's note. Experts "may not . . . apply the resulting law to the facts of [a] case to draw a legal conclusion. In essence, the experts may testify as to their factual conclusions so long as they do not offer a legal opinion as to the legal implications of those conclusions." Langbord v. U.S. Dep't of the Treasury, No. 06-05315, 2009 WL 1312576, at *8 (E.D. Pa. May 7, 2009); see also Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006) (An "expert witness is prohibited from rendering a legal opinion."), Jackson v. City of Pittsburgh, No. 07-111, 2011 WL 3443951, at *18 n. 24 (W.D. Pa. Aug. 8, 2011) (same).

Because it is the role of the factfinder and not Mr. Ehrlich to determine whether QVC's determination to recall the heaters was reasonable, I will grant QVC's motion to the extent that QVC seeks to preclude Ehrlich's conclusions that QVC's recall decision had no basis, was arbitrary, not justified, or not substantiated or that QVC lacked a right to issue a recall. See Berckeley Inv. Grp., 455 F.3d at 218 (excluding expert testimony "opining that in light of the apparent routine industry practice it was reasonable for [plaintiff] to have believed" that it was entitled to an exemption from federal securities laws); Hygh v. Jacobs, 961 F.2d 359, 364 (2d Cir. 1992) (holding expert's conclusory condemnations of defendant's actions merely told the jury what result to reach and should have been excluded).

I will also grant QVC's motion to the extent that QVC seeks to preclude Ehrlich's testimony as to his conclusion that "QVC's letters to the CPSC confirm that their recall does not comport with the CPSC's requirements for a product safety recall." Dkt. No. 68-2 at 5. This conclusion also crosses over the line from admissible testimony to inadmissible legal opinion. See Payne v. A.O. Smith Corp., 627 F. Supp 226, 227-28 (finding that "[t]he Court cannot abdicate its role as finder of law" and excluding expert opinion that a product recall should have been performed by defendants under the requirements of the Consumer Product Safety Act) (S.D. Ohio 1985).

**II.     Qualifications**

At a minimum, a proffered expert witness "must possess skill or knowledge greater than the average layman." Elcock, 233 F.3d at 741. However, as the Court of Appeals has held, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the

specialization that the court considers most appropriate." Holbrook v. Lykes Bros. S.S. Co., Inc., 80 F.3d 777, 782 (3d Cir. 1996). "Because of our liberal approach to admitting expert testimony, most arguments about an expert's qualifications relate more to the weight to be given the expert's testimony than to its admissibility." Id. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 96.

### A.   Product Recalls

QVC contends that Ehrlich is not qualified to testify as an expert on product recalls. Indeed, neither Ehrlich's resume, Dkt. No. 68-2 at 11-14[3], nor his deposition testimony, Dkt. Nos. 68-3 and 68-4, identify any specific experience or knowledge with respect to handling product recalls.[4]  Contra In re Stand N' Seal, Products Liab. Litig., No. 07-1804, 2009 WL 1772585, at *5 (holding former CPSC employee was qualified to testify as an expert on product recalls where, during her employment, she was privy to the "product recall and notice practices of hundreds of different companies").

In response, Soleus asserts that

> Ehrlich will testify from specialized knowledge that: (1) the results of QVC's investigation disclosed no design flaws and pointed to a potential crimping error; (2) by its nature, a potential crimping error is likely isolated or intermittent; (3) the isolated nature of the defect indicated the need to further investigate whether the problems are isolated to particular lots; and (4) QVC's decision to recall all of the Heaters as defective given this factual predicate

---

[3]   This reference is to page numbers generated by the electronic case filing system.

[4]   In Nisanov v. Black & Decker (U.S.) Inc., No. 05-5911, 2008 WL 906708, at *6 (E.D.N.Y. Apr. 03, 2008), the Court found that "Ehrlich [was] qualified to opine on whether a recall is necessary." I decline to adopt this finding for the reasons stated in this opinion.

was unsupported from a quality control perspective.

Dkt. No. 71 at 15. With respect to the first, second and third points, Ehrlich's experience, as reflected in his curriculum vitae and though his deposition testimony, qualifies him to testify about design flaws, crimping errors and their implications for subsequent product defect investigations. An expert who testifies primarily from experience must "explain 'how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Suter v. Gen. Acc. Ins. Co. of Am., 424 F. Supp.2d 781, 788 (D.N.J. 2006), quoting Fed. R. Evid. 702 advisory committee's note, 2000 amendments). Regarding the fourth point, because neither Ehrlich's curriculum vitae nor his deposition testimony identify any experience specific to making a determination as to whether a product should be recalled, I find that Ehrlich is not qualified to testify as to whether QVC's decision to recall all of the Heaters as defective was supported from a quality control perspective.

      B.    **Statistical Analysis**

QVC contends that Ehrlich should be precluded from offering opinions based on his findings relating to the number or percentage of defective heaters that Soleus sold to QVC. Erhlich's January 11 report includes a conclusion that "any defects present in the shipments were not statistically significant." Dkt. No. 68-1 at 4, 11. Ehrlich testified that he considers himself to be an expert in the field of statistical analysis "when it comes to quality control." Dkt. No. 68-4 at 100:11-13. However, QVC asserts that Ehrlich lacks advanced education and experience in statistical analysis. His educational background includes only courses in probability and statistics taken "probably 40 years ago." Dkt. No. 68-4 at 98-18-99:24. Although Ehrlich

testified at his deposition that the field of quality control incorporates statistics, Dkt. No. 68-4 at 101:1-102:9, his resume provides no details as to his practical experience in conducting statistical analysis. I find that Soleus has not demonstrated that Ehrlich possesses sufficient "knowledge, skill, experience, training, or education" to provide testimony on statistical issues that will "assist the trier of fact." Fed. R. Evid. 702; see also Arista Records LLC v. Lime Group LLC, No. 06-5936, 2011 WL 1674796, at *5-6 (S.D.N.Y. May 2, 2011) (precluding expert testimony that depended on statistical analysis where the expert did not "have a degree in statistics, does not teach statistics, has never published articles on statistics" and, although he "claimed to use statistical methods in his . . . work, at his deposition, he was unable to provide specifics about the particular statistical methodologies he has used").

Further, even if Soleus could establish Ehrlich were sufficiently qualified to testify with respect to statistical analysis, I would still exclude his conclusions because he has not explained the methods he used to arrive at a statistical analysis of relevant data. An expert's opinions may not be based "on subjective belief or unsupported speculation." In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 742 (3d Cir. 1994) (citations and internal quotations omitted).

Neither Erhlich's testimony nor his reports provide any details as to how he conducted the analysis that allowed him to arrive at his conclusion regarding the lack of statistical significance of any defects present in the shipments of heaters. Instead, his testimony speaks only generally about how quality control analysis may incorporate statistics:

> So you do a sampling based on the ASQC tables, which are
> derived from the original MIL tables, and you develop what's
> called an AQL, or an acceptable quality level. . . . The accepted
> quality level and the size of the lot which you're looking at
> determined how many pieces you're going to pick to look at. And

>then you have a criteria, which is the AQL, that may say accept on
>zero defects, reject on one. . . . And this is really based on the
>probability that you're getting a picture of the entire lot, usually
>with a 95 percent confidence level. . . . So it's based on statistics.
>It's based on probability. And it's – actually it's a standard.

Dkt. No. 68-4 at 101:9-102:9.  Ehrlich did not testify that he in fact undertook the sampling he described.  Likewise, although his January 11 report concludes that "any defects present in the shipments were not statistically significant," Dkt. No. 68-1 at 4, 11, his report provides no explanation of the methodology he applied in reaching this conclusion.  Instead, he testified that "through sampling QVC *could* have determined which lots were bad, which lots were good."  Id. at 102:15-17.

Accordingly, I will grant QVC's motion to the extent that it seeks to exclude opinions that purport to be based on statistical analysis.

An appropriate Order follows.