IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QVC, INC. | : | CIVIL ACTION |
| | : | NO. 08-3830 |
| v. | : | |
| | : | |
| MJC AMERICA, LTD. | : | |
| d/b/a SOLEUS INTERNATIONAL, INC. | : | |
| | : | |

O'NEILL, J.                                                                           January 6, 2012

## MEMORANDUM[1]

Plaintiff and counterclaim-defendant QVC, Inc.'s claims against defendant and

counterclaim-plaintiff MJC America, Ltd., d/b/a Soleus International, Inc., include a claim

seeking to recover costs and damages allegedly attributable to QVC's voluntary recall of 19,000

SoleusAir model HM5-15A-32 space heaters.  Among the issues to be determined at trial is

whether QVC was entitled to recall the heaters under the terms of the purchase orders for the

heaters, which provided that:

> In the event [QVC] reasonably determines that any Merchandise
> sold by [QVC] to its customers contains any defect, [QVC] may, in
> its sole discretion (taking into account [QVC's] standards for
> customer satisfaction), subject to applicable law, determine
> whether [to conduct] a voluntary recall or other action (including
> the determination as to whether [QVC's] customers will be offered
> a replacement item of Merchandise or a refund of their purchase
> price and shipping and handling charges).

Compl. ¶ 20.  Soleus disputes QVC's contention that it made a reasonable determination that the

heaters were defective.  In support of the reasonableness of its determination, QVC alleges, inter

---

[1]        This case is to be tried as a bench trial.

alia, that it received "numerous customer reports that units of the V24882 Merchandise, when used for the purpose and in the manner intended, emit spoke and sparks, overheat and/or catch fire." Compl. ¶ 24. In its pretrial memorandum, QVC asserts that "[b]ased upon the quantity, severity and similarity of the customer complaints, and its observations during its inspection of the customer-returned units, QVC was concerned for the health and safety of the customers that purchased the Heaters." Dkt. No. 65 at 4.

QVC contends that there are 96 relevant customer complaints recorded and retained on QVC customer complaint logs. Dkt. 72 at 2. Complaints made to QVC via itstoll-free customer service phone line are logged by a QVC employee into a customer service database. Dkt. No. 69, Ex. A. at 18-19. QVC asserts that the evidence at trial will establish that for customer complaints received via telephone, "the customer service representative verifies that the caller has a QVC customer number and that the customer purchased the product about which they are calling." Dkt. No. 72 at 3-4. Further, each customer service representative is responsible "to record, accurately and completely, the information that is provided by the customer, including the product, the skn number, any statements by the customer and return contact information." Dkt. No. 72 at 4. The information received is recorded contemporaneously. Dkt. No. 72 at 4.

QVC also receives customer complaints from customer-submitted product reviews on the QVC.com website. Id. When QVC accepts customer returns, it logs the reason for the return and the customer number in order to process refund requests. Dkt. No. 69, Ex. B at 66. A QVC employee periodically compiles reports about customer complaints suggesting health or safety issues. Dkt. No. 69, Ex. A at 19. At the time that the relevant complaints were logged, QVC did not have a defined procedure for verifying or investigating customer complaints. Dkt. No. 69,

Ex. C at 38.

Soleus moves to exclude evidence of the customer complaints, arguing that such evidence

constitutes inadmissible hearsay.[2]  Hearsay is "a statement, other than one made by the declarant

while testifying at the trial or hearing, offered in evidence to provide the truth of the matter

asserted."  Fed. R. Evid. 801(c).  Soleus asks that I enter an Order finding that evidence of

customer complaints concerning the space heaters is inadmissible to prove that the heaters

overheated, malfunctioned, or otherwise were defective under normal use.  Soleus also asks that I

preclude QVC from introducing into evidence any documents or testimony stating, recording or

otherwise reflecting the substance of customer complaints.  QVC responds by arguing that its

customer complaint logs are admissible in three ways: (1) as business records not excluded by

the hearsay rule, as set forth in Rule 803(6) of the Federal Rules of Evidence, (2) "to demonstrate

the effect that they had on QVC, QVC's resultant state of mind, and QVC's actions as a result,"

---

[2]     Soleus also contends that "[t]he Court should exclude the complaint records
themselves under Fed. R. Evid. 403 because the potential for unfair prejudice from unverified,
unreliable, hearsay complaints vastly outweighs the marginal probative value of the unverified
complaints."  Dkt. No. 69 at 5.  However,

> Rule 403 has no logical application to bench trials.  Excluding
> relevant evidence in a bench trial because it is cumulative or a
> waste of time is clearly a proper exercise of the judge's power, but
> excluding relevant evidence on the basis of "unfair prejudice" is a
> useless procedure.  Rule 403 assumes a trial judge is able to
> discern and weigh the improper inferences that a jury might draw
> from certain evidence, and then balance those improprieties against
> probative value and necessity.  Certainly, in a bench trial, the same
> judge can also exclude those improper inferences from his mind in
> reaching a decision.

Gulf States Utils. Co. v. Ecodyne Corp., 635 F.2d 517, 519 (5th Cir.1981), quoted in I.B.E.W.
Local Union 380 Pension Fund v. Buck Consultants et al., No. 03-4932, 2008 WL 2265269, at
*3 (E.D. Pa. June 3, 2008).

Dkt. No. 72 at 4, and (3) under Rule 807, the so-called catchall exception to the hearsay rule.  For

the reasons that follow I will grant in part and deny in part Soleus's motion.

## I.     Business Records

Even if QVC's customer complaint logs are business records, they cannot be admitted as

evidence of the truth of the complaints contained therein because the complaints described in the

logs are themselves hearsay.  Williams v. Remington Arms Co., No. 05-1383, 2008 WL 222496,

at * (N.D. Tex. Jan. 28, 2008) ("[W]hen the complaints are offered to prove the truth of the

matters asserted in the complaints, they are hearsay.")

> While a compilation of such complaints . . . might constitute a
> business record that such claims were (or were not) received, they
> could not be a business record that such claims are true unless the
> employee making the record has personal knowledge of each.
> Thus consumer complaints in a company's file are generally
> hearsay within hearsay and require their own exception in addition
> to that for business records generally.

Olson v. Ford Motor Co., 410 F. Supp. 2d 855, 861 (D.N.D. 2006), quoting Nissan Motor Co. v.

Armstrong, 145 S.W.3d 131, 140 (Tex. 2004).  "If the records contain information obtained from

a customer, thus constituting hearsay within hearsay, the records will come within the business

records exception only 'if it is shown that the business's standard practice was to verify the

information provided.'"  U.S. v. Mitchell, 49 F.3d 769, 778 (D.C. Cir. 1995), quoting U.S. v.

Patrick, 959 F.2d 991, 1001 (D.C. Cir. 1992) (alteration omitted).  QVC does not contend that it

took steps to verify each of the customer complaints included in its complaint logs.  Further, it

does not appear that QVC has identified any of the complainants as witnesses.  Accordingly, they

"are unavailable for cross-examination regarding the truth of the allegations."  Boddicker v. Am.

Honda Motor Co., No. 10-1018, 2011 WL 6132099, at *4 (N.D. Iowa Dec. 8, 2011) (excluding

Honda-maintained records regarding customer complaints).  "The problem is that the customer is under no duty to report accurately."  Shimozono v. May Dep't Stores Co., No. 00-04261, 2002 WL 34373490, at *13 (C.D. Cal. Nov. 20, 2002).  The business records exception cannot be used to admit the customer complaints or the customer complaint logs as evidence that the complained of heaters in fact overheated, malfunctioned or otherwise were defective under normal use.

## II.     QVC's Notice of Customer Complaints

Regardless of their truth, evidence of the customer complaints is admissible to demonstrate that QVC had notice that certain of its customers had logged complaints pertaining to the performance of the heaters and an awareness of the possibility that the heaters were defective prior to making its determination that a recall of the heaters was necessary. "Statements that arguably constitute hearsay may still be offered when offered not for the truth of the matter asserted, but to show notice."  Galloway v. Big G Express, Inc., No. 05-545, 2008 WL 2704443, at * 3 (E.D. Tenn. Jul. 3, 2008) (quotation omitted); see also Willis v. Kia Mtrs. Corp., No. 07-062, 2009 WL 2351766, at *2 (N.D. Miss. July 29, 2009) (finding that customer complaints were not hearsay when they were "not being used to prove the truth of the matter asserted (i.e., that the incidents actually happened the way they were reported), but rather they [were] being offered for notice of a potential problem with the Sportage's door latch and/or seatbelt"); Olson, 410 F. Supp. 2d at 863 ("While the customer complaints are not admissible as evidence of a defect, the Court finds that the customer complaints are admissible to show that Ford received such complaints and was on notice of the allegations set forth in the complaints."). Soleus contends that because this is a breach of contract case and not a tort case, QVC's notice of a potential defect is not at issue here.  I find that QVC's notice of customer complaints regarding

the heaters is relevant to the determination of whether QVC's ultimate decision to recall the

heaters was in accordance with the terms of the purchase orders.  Accordingly, QVC may

introduce evidence of its customer complaint logs and the customer complaints for the purpose of

establishing its notice of customer complaints when it determined to recall the heaters.

**III.     Rule 807**

QVC's final contention is that evidence of the customer's complaints regarding the

heaters is admissible pursuant to Rule 807, which provides, in relevant part that:

> [u]nder the following circumstances, a hearsay statement is not
> excluded by the rule against hearsay even if the statement is not
> specifically covered by a hearsay exception in Rule 803 or 804:
>
> (1)     the statement has equivalent circumstantial guarantees of
>          trustworthiness;
>
> (2)     it is offered as evidence of a material fact;
>
> (3)     it is more probative on the point for which it is offered than
>          any other evidence that the proponent can obtain through
>          reasonable efforts; and
>
> (4)     admitting it will best serve the purposes of [the] rules [of
>          evidence] and the interests of justice.

Fed. R. Evid. 807(a).[3]  "This residual hearsay exception should be used only rarely and in

exceptional circumstances."  Fed. Trade Comm'n v. Magazine Solutions LLC, No. 07-692, 2009

WL 690613, at *1, citing United States v. Bailey, 581 F.2d 341, 347 (3d Cir.1978).  I find that

the residual hearsay exception does not allow for the admission of evidence of the customer

---

[3]     A party seeking to use the catch-all exception must, before trial, give the opposing
party notice of both its intent to offer a statement under Rule 807 and the particulars of the
statement, "including the declarant's name and address."  Fed. R. Evid. 807(b).  Soleus has not
asserted that QVC did not provide it with appropriate notice under Rule 807(b).

complaints for their truth.

In its response to Soleus's motion, QVC contends that "further to the instant civil action,"

it identified 41 of the 96 heaters that were the subjects of customer complaints, that experts for

both QVC and Soleus examined those 41 heaters, and that "[t]he Court will hear testimony that

the Heaters showed physical damage consistent with the complaints made by the customers."

Dkt. No. 72 at 6. With respect to the customer complaints for the 41 heaters that QVC and

Soleus were able to examine, if QVC seeks to admit the complaints as evidence that the

complained of heaters were in fact defective, the complaints are not more probative on that point

than the evidence obtained by QVC and Soleus through their actual examination of those heaters.

For the remaining 55 customer complaints where QVC was unable to locate the

complained of heater for a subsequent examination, I find that they do not have sufficient

circumstantial guarantees of trustworthiness to warrant their admission under Rule 807. QVC

argues that the complaints "were made voluntarily, were based upon the personal knowledge and

experience of the customers, the statements were made in close temporal proximity to when the

Heaters were sold and delivered, the customers have no motive to fabricate, and the customers'

comments were not made in anticipation of litigation." Dkt. No. 72 at 6-7. Soleus, on the other

hand, notes that a QVC quality engineer questioned whether the customer claims of fire might

have been exaggerated. Dkt. No. 69 at 5; see also Dkt. No. 69, Ex. E. Further, the customer

complaints were not made under oath; the declarants were not subject to cross-examination; and

the statements have not been verified. The interests of justice are not best served by allowing

admission of these complaints for their truth. This is particularly true where "[t]he Rule 807

residual hearsay exception is . . . meant to 'apply only when certain exceptional guarantees of

trustworthiness exist and when high degrees of probativeness and necessity are present.'"  U.S. v.

Wilson, 281 Fed. App'x 96, 99 (3d Cir. 2008), quoting, Bailey, 581 F.2d at 347 (3d Cir.1978).

An appropriate Order follows.