IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QVC, INC. | : | CIVIL ACTION |
| | : | NO. 08-3830 |
| v. | : | |
| | : | |
| MJC AMERICA, LTD. | : | |
| d/b/a SOLEUS INTERNATIONAL, INC. | : | |

O'NEILL, J.                                                                                                                         August 5, 2013

## MEMORANDUM

The parties' claims against each other in this action arose out of plaintiff and counterclaim defendant QVC, Inc.'s purchase of electric space heaters and other items from defendant and counterclaim-plaintiff MJC America, Ltd. d/b/a Soleus, International, Inc. and QVC's subsequent recall of certain of those space heaters. After a bench trial I found that Soleus is liable for QVC's reasonable attorney's fees resulting from Soleus's breach of its obligations to QVC under terms of certain Purchase Orders for those space heaters and other items. Dkt. No. 112 at ECF p. 51. I also found that Soleus is liable to QVC for prejudgment interest with respect to QVC's damages. Id. at ECF p. 51-53.

In Section 4 of the Purchase Orders, Soleus agreed, inter alia, to hold harmless and indemnify QVC from and against any "direct, special, incidental, exemplary, and consequential damages and losses of any kind," specifically including lost profits and reasonable attorneys' fees "based upon or resulting from . . . any alleged or actual defect" in the Heaters. Jt. Stip. ¶ 14; P-9. Section 4 provides, in relevant part:

> 4. Vendor hereby agrees to protect, defend, hold harmless and indemnify Buyer . . . from and against any and all claims, actions, suits, costs, liabilities, damages and expenses (including but not limited to, all direct, special, incidental, exemplary and consequential damages and losses of any kind [including, without limitation, present and prospective lost profits and lost business]

> and reasonable attorneys' fees) based upon or resulting from . . .
> (b) any alleged or actual defect in any of the Merchandise . . . [and]
> (d) breach by Vendor of any representations, warranties or covenants[.]

Id.

Now before me is QVC's motion to revise the judgment entered in favor of it and against Soleus, International, Inc. to include its reasonable attorney's fees and prejudgment interest. In its motion, QVC seeks $747,647.76 in reasonable attorney's fees and $157,804.50 in costs and expenses,[1] including expert witness fees paid to Saul Ewing, LLP. Dkt. No. 104 at ECF p. 3; Dkt. No. 114. QVC also seeks $16,632.00 in reasonable attorney's fees and $645.71 in costs and expenses paid to Brown & Gidding, P.C."[2] Id. Upon consideration of QVC's motion (Dkt. No. 104), Soleus's opposition thereto (Dkt. Nos. 112 and 113), and QVC's reply (Dkt. No. 114), I will enter an order revising the judgment consistent with the following opinion.

**I.     Attorney's Fees**

The lodestar formula, which multiplies by a reasonable hourly rate the number of hours reasonably expended, provides the starting point for determining reasonable attorneys' fees. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Where an "adverse party raises objections to [a] fee request, the court possesses considerable discretion to adjust the award in light of those objections." Loesch v. City of Phila., No. 05-0578, 2008 WL 2557429, at *2 (E.D. Pa. Jun. 25, 2008), citing Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). The "Court has an independent duty to satisfy itself that the [ ] fees requested are reasonable." Alphonso v. Pitney Bowes, Inc., 356 F. Supp. 2d 442, 460 (D.N.J. 2005); cf. Mosaid Techs. Inc. v. Samsung Elecs.

---

[1]     This amount is amended from QVC's initial request for costs to exclude airfare and travel expenses unrelated to this action. See Dkt. No. 114 at ECF p. 11 n.1.

[2]     Soleus's opposition to QVC's motion to revise the judgment does not include any objections to the attorney's fees or costs and expenses paid to Brown & Gidding. Therefore I will order that the judgment be amended to include these fees and costs.

Co., 224 F.R.D. 595, 597 (D.N.J. 2004) ("Although the calculation of attorneys' fees and costs is an inexact science, . . . the amount awarded must still be reasonable.") (citations and internal quotation omitted).

### A.     Saul Ewing's Hourly Rates

Soleus challenges the reasonableness of the hourly rates charged by Saul Ewing.  "The party requesting fees has the burden of demonstrating the reasonableness of the fees by submitting evidence of the appropriate hourly rate."  Aerogroup Int'l v. Ozburn-Hessey Logistics, LLC, No. 08-4217, 2010 WL 4746246, at *5 (D.N.J. Nov. 15, 2010), citing Washington v. Phila. Cnty. Ct. of Comm. Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).  "A reasonable rate is the prevailing market rate in the relevant community.  An attorney's usual billing rate is a good starting point for assessing reasonableness, though it is not dispositive."  Neena S. v. Sch. Dist. of Phila., No. 05-5404, 2009 WL 2245066, at *3 (E.D. Pa. July 27, 2009), citing Washington, 89 F.3d at 1035-36.

Soleus contends that the Court should look to the fee schedule established by Community Legal Services, Inc. to determine the reasonableness of the rates QVC seeks to recover.  Dkt. No. 113 at p. 4.  "The Third Circuit and this Court have accepted the CLS Fee Schedule in some circumstances – when the attorneys were associated with CLS, or when the parties submitted limited evidence regarding fees."  Zavodnick v. Gordon & Weisberg, P.C., No. 10-7125, 2012 WL 2036493 (E.D. Pa. June 6, 2012) (citations omitted), at *5.  As Soleus notes, QVC's motion to revise the judgment does not set forth evidence to establish whether the hourly rates charged by Saul Ewing are reasonable.  Dkt. No. 113 at p. 4.  To respond to this deficiency QVC attached to its reply memorandum evidence to demonstrate that its hourly rates were reasonable based on an "assess[ment] of the experience and skill of [QVC's] attorneys" and a comparison of "their

rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 708 (3d Cir. 2005).  QVC's evidence includes a declaration by Craig R. Tractenberg, Esq. of Nixon Peabody LLP and publicly available surveys of hourly fees charged by attorneys in the Philadelphia market with reasonably comparable skill, experience and reputation.  Dkt. No. 114 at ECF p. 5-6.  Faced with this additional evidence regarding appropriate benchmarks for the hourly rates for QVC's attorneys, Soleus did not file a response further challenging the reasonableness of the hourly rates sought.  It has not, therefore

> rebut[ted QVC's] prima facie case of the reasonableness of the rates requested for [its attorneys].  It has not challenged the qualifications of Mr. [Tractenberg] to opine on this issue, and it has submitted no affidavit and offered no testimony contesting the accuracy of Mr. [Tractenberg's] statements regarding the rates for attorneys in Philadelphia with similar experience and expertise.

Blagrave v. Nutrition Mgmt. Servs. Co., No. 05-6790, 2009 WL 440299, at *7 (E.D. Pa. Feb. 20, 2009).

Having reviewed the information submitted by the parties and considering the experience of QVC's attorneys and the rates charged by similarly experienced attorneys for comparable work, I find that there is not a reason to depart from the hourly rates charged by QVC's attorneys in calculating the fee award.

### B. Number of Hours Expended

Courts should review the time charged and determine whether the hours listed were reasonably spent on the particular tasks described.  Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).  Excessive, redundant or unnecessary hours should not be included in calculating an award of fees.  Hensley, 461 U.S. at 434.  Where "an objecting party has challenged specific types of work and states why it is contended that the hours claimed are excessive, the reviewing

court must support its findings with a sufficient articulation of its rationale to allow for meaningful appellate review." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., No. 11-3813, 2013 WL 3481510, at *10 (3d Cir. July 8, 2013) (citation omitted).  Accordingly, I will consider each of Soleus's objections to the time sought by QVC's attorneys.

### 1. Hours Billed by Senior Attorneys

Soleus objects to the number of hours expended by senior attorneys on this matter, arguing that "85% of Saul Ewing's professional time and 90% of the dollar value was billed by three Saul Ewing partners ([Nathaniel] Metz, [David] Moff[it]t and [Amy] Kline) with 9 or more years of experience at a blended rate of $415/hr." Dkt. No. 113 at p. 9.  Soleus contends "that such top-heavy billing and lack of delegation is unreasonable for a non-complex matter such as this." Id.  In particular, Soleus challenges certain time entries by partners Metz and Moffitt as time billed for tasks that "should have been delegated and could have been performed by less-skilled personnel (i.e., associate, paralegal, or secretarial)[.]" Id.  The time entries in question were identified as follows:

| Investigate corporate identity of vendor | 0.3 |
| Assistance in research of legal issues for complaint and possible injunction | 0.8 |
| Assistance with research on pre-judgment attachment of assets | 0.2 |
| Letter to Soleus re: Court Notice and Guidelines | 0.2 |
| Review Motion for extension of time and correspondence to defendant's counsel re: same | 0.1 |
| Correspondence to court re: motion to dismiss | 0.3 |
| Confirm service date and method | 0.3 |
| Assistance with third party subpoenas | 0.3 |
| Assistance with deposition scheduling | 0.3 |
| Assistance with Sam's Club subpoenas | 0.1 |
| Assistance with deposition scheduling issues | 0.4 |
| Interview potential translators re Chinese depositions | 0.3 |
| Investigate Mandarin interpreter for Chinese witnesses | 0.4 |
| Assistance with scheduling of inspection | 0.3 |
| Assistance with scheduling of inspection | 0.3 |

| Assistance with resolution of expert inspection issues | 0.4 |
|---|---|
| Further assistance with resolution of expert issues | 0.5 |

Id. at p. 10. QVC responds that the time entries challenged by Soleus reflect an "appropriate level of oversight and management by the senior partner of this case." Dkt. No. 114 at ECF p. 9. I agree with QVC.

Although it is true that "[c]ounsel must be sure to properly delegate tasks; the quarterback cannot carry the water bottles," In re Budeprion XL Mktg. & Sales Litig., MDL 2107, 2012 WL 2527021, at *21 (E.D. Pa. July 2, 2012) (citation omitted), I find that it was not unreasonable for QVC's partner-level attorneys to perform the tasks identified by Soleus in its opposition memorandum. Nor was the amount of time QVC's attorneys billed for these tasks unreasonable. If counsel for QVC had delegated the work listed above, Soleus "could expect to see multiple billing records for many of the same tasks, as the partner would necessarily review associate work and/or conference with other attorneys. An associate would doubtless have needed more time to do similar tasks, even if he or she had capability to do so." Downey v. Coal. Against Rape & Abuse, Inc., No. 99-3370, 2005 WL 2452769, at *7 (D.N.J. Sept. 30, 2005). I decline to find that the above-listed time entries were unreasonable and will not exclude them from QVC's attorney's fee award.

### 2. Admissibility of Customer Complaints

Soleus objects to the amount of time spent by QVC's attorneys researching the admissibility of customer complaints. Dkt. No. 113 at p. 11. Soleus, however, filed a motion in limine asking the Court to preclude the use of customer complaints as inadmissible hearsay evidence. Dkt. No. 69. I granted Soleus' motion "to the extent that it [sought] to preclude evidence of customer complaints concerning the heaters at issue in this litigation as evidence that the heaters in fact overheated, malfunctioned or otherwise were defective under normal use," but

-6-

allowed QVC to "introduce evidence of its customer complaint logs and the customer complaints for the purpose of establishing its notice of customer complaints when it determined to recall the heaters."  Dkt. No. 76.  Accordingly, I find that the time QVC's attorneys spent on the admissibility of customer complaints was reasonable and decline to excise this time from the award of attorney's fees.

### 3. Daubert Motion

QVC filed a straightforward motion in limine seeking to limit the scope of expert testimony proffered by Soleus.  Dkt. No. 68.  Soleus objects to the amount of time QVC's attorneys spent researching and preparing the Daubert motion.  Dkt. No. 113 at p. 11.  I granted QVC's motion to the extent that it sought to exclude opinions that purported to be based on statistical analysis.  See Dkt. No. 73 at ECF p. 9.  Thus I decline to excise from the award of attorney's fees all of the time QVC's attorneys spent on the Daubert Motion.

Considering the issues raised in QVC's motion in limine, I find, however, that the amount of time billed in conjunction with Daubert issues was excessive.  In addition to 6.4 hours of Daubert-related time entries billed by Ms. Kline, see Dkt. No. 105, Ex. B at QVC-20-00210-00227, and 2 hours billed by Mr. Metz, see id. at QVC-20-00215, 00225, and 00227, an associate attorney spent 32.5 hours researching and drafting QVC's motion in limine at a rate of $295.00 per hour, for a total of $9,591.00.  See Dkt. No. 113 at p. 11-14 (summarizing Daubert-related associate time entries).  I will reduce the associate time billed by 8 hours or $2,360.00.

### 4. Spoliation Motion

Soleus challenges QVC's request that the fee award include time that two of its attorneys spent researching spoliation issues and drafting a motion based on spoliation of evidence, a

motion that was never filed.[3]  Dkt. No. 113 at ECF p. 15.  QVC's requested fees include $5,076.00 for 24.5 hours billed by an of counsel attorney and $2,537.00 for 8.6 hours billed by an associate attorney on spoliation issues.  QVC contends that "[w]hile no formal spoliation motion was filed, the research conducted on this topic informed QVC's trial strategy and, in particular, its response to spoliation claims lodged by Soleus against QVC."  Dkt. No. 114 at ECF p. 10.

On this issue, I agree with Soleus.  Because I cannot in good conscience award a fee for work done on a motion that was not filed with the court, I decline to award the requested $7,613.00 in fees for time spent by the of-counsel attorney and the associate on their work related to spoliation of evidence.  Further, although Soleus did not specifically object to Ms. Kline's time entries for work that appears to be related to the unfiled spoliation motion, I will also exclude from QVC's fee award the following time that she billed:

| Date | Description | Time | Amount |
| --- | --- | --- | --- |
| 5/26/10 | Analyze facts and merits re: motion on spoliation of evidence. | 0.1 | 39.00 |
| 6/9/10 | Analyze facts law re: spoliation motion (destruction of evidence by Soleus) | 0.5 | 195.00 |
| 6/14/10 | Correspondence re: spoliation motion | 0.1 | 39.00 |
| 6/15/10 | Attention to spoliation motion issues | 0.1 | 39.00 |
| 6/15/10 | Review discovery responses by Soleus re: motion on spoliation | 0.3 | 117.00 |
| 6/17/10 | Review motion re: spoliation of evidence | 0.2 | 78.00 |
| 6/28/10 | Review caselaw re: spoliation and summary judgment/sanctions | 0.6 | 234.00 |

---

[3]  I note that Soleus did not specifically object to certain time entries for Ms. Kline for work that also appears to be related to the unfiled spoliation motion.  See Dkt. No. 105, Ex. B at QVC-20-00136-00143.

| 6/28/10 | Review and revise summary judgment/sanctions motion re: spoliation of evidence by Soleus | 1.7 | 663.00 |
|---|---|---|---|
| **Total** | | 3.6 hours | $1,404.00 |

Dkt. No. 105, Ex. B at QVC-20-00136-00143.  In order to exclude time spent on the spoliation motion I will therefore reduce QVC's fees by a total amount of $9,017.00.

### 5. Settlement Conference

Soleus contends that "[i]t was also unnecessary for QVC to have two senior partners attend the settlement conference on September 29, 2011."  Dkt. No. 113 at ECF p. **17**.  QVC counters that it was "plainly reasonable" for it to have "the individual responsible for the client relationship and the person most knowledgeable about the case both attend the settlement conference."  Dkt. No. 114 at ECF p. 10.  I agree with QVC and decline to eliminate the time the second partner spent at the settlement conference from QVC's requested fee award.

### 6. Attendance at Trial and Travel to and from Trial

Soleus similarly argues that "it was not necessary for plaintiff QVC to have three partners attend the trial" and asks that I deduct time spent by Mr. Metz for his travel to and from and attendance at trial.  Dkt. No. 113 at p. 17.  QVC asserts that "Mr. Metz participated in the preparation of witnesses, the selection of exhibits, the order and manner of direct and cross examinations and each and every strategic decision made over the course of the five-day trial."  Dkt. No. 114 at ECF p. 10.

I agree with Soleus.  The trial of this matter involved straightforward breach of contract claims.  Further, Mr. Metz did not conduct direct or cross-examination of a witness at trial.  Mr. Metz's contribution to the case, while it may have been  important, did not require his presence in the courtroom.  Because QVC did not require the attendance of three partners at the trial for its

duration, I will not award it Mr. Metz's fees for his attendance at trial or for his time traveling to and from the trial. See Advanced Med., Inc. v. Arden Med. Sys., Inc., No. 87-3059, 1990 WL 39261, at *5 (E.D. Pa. Mar. 30, 1990) ("While the court recognize[d] that an attorney responsible for bringing a client to a firm's business department often becomes involved in that client's transition to the litigation department, the court" declined to award time billed by a partner that "was spent in merely overseeing the progress of the case."). I will not, however, exclude time that Mr. Metz spent on trial preparation. Accordingly, I will exclude from QVC's fee award $15,931.00 billed by Mr. Metz for his time spent attending and traveling to and from the trial, as reflected by the following time entries:[4]

| Date | Description | Time | Amount |
|---|---|---|---|
| 1/9/12 | Travel to trial | 0.7 | 343.00 |
| 1/9/12 | Attendance at trial | 5.5 | 2,695.00 |
| 1/9/12 | Travel from trial | 0.7 | 343.00 |
| 1/10/12 | Travel to trial | 0.8 | 392.00 |
| 1/10/12 | Attendance at trial | 5.0 | 2,450.00 |
| 1/10/12 | Travel from trial | 0.7 | 343.00 |
| 1/11/12 | Travel to trial | 0.8 | 392.00 |
| 1/11/12 | Attendance at trial | 5.0 | 2,450.00 |
| 1/11/12 | Travel from trial | 0.7 | 343.00 |
| 1/12/12 | Travel to trial | 0.8 | 392.00 |
| 1/12/12 | Attendance at trial | 5.5 | 2,695.00 |
| 1/12/12 | Travel from trial | 0.8 | 392.00 |
| 1/13/12 | Travel to trial | 0.8 | 392.00 |
| 1/13/12 | Attendance at trial | 3.3 | 1,917.00 |
| 1/13/12 | Travel from trial | 0.8 | 392.00 |
| **Total** | | 31.9 hours | $15,931.00 |

### 7. Insufficiently Detailed Time Entries

"[A] fee petition must be specific enough to determine if the hours claimed are reasonable for the work performed." Hatchett v. Cnty. of Phila., No. 09-1708, 2010 WL 4054285, at *2 (E.D. Pa. Oct. 15, 2010), citing Rode, 892 F.2d at 1190. Soleus objects to two

---

[4] I will also exclude the $61.00 that Mr. Metz incurred in costs for parking at trial from QVC's award of costs. See Dkt. No. 113 at p. 18.

time entries for attorney Mark C. Cawley for April 3, 2008 as lacking sufficient detail. Dkt. No. 113 at p. 18. The first entry, for $96.00 for 0.3 hours, is for time to "Analyze U.S. Supreme Court opinion in Grupo Mexicana REDACTED." Dkt. No. 105, Ex. B at QVC 20-00006. The second entry, for $832.00 for 2.6 hours is to "Research and analyze federal case law REDACTED." Id. QVC does not specifically respond to Soleus's objection to these time entries and they do not include sufficient details to allow me to determine how they were related to QVC's claims in this matter. I will exclude $928.00 from QVC's fee award for this time.[5]

### C. Revised Attorney's Fees

I will therefore enter an Order revising the judgment to award QVC $719,411.76 for its reasonable attorney's fees paid to Saul Ewing (i.e., QVC's requested fees of $747,647.76 less $2,360 for time spent on the Daubert motion, $9,017.00 for time spent on the spoliation motion, $15,931 for Mr. Metz's attendance at and travel to and from trial, and $928.00 for Mr. Cawley's inadequately documented time entries).

## II. Costs

Under Section 4 of the Purchase Orders, Soleus "agree[d] to protect, defend, hold harmless and indemnify [QVC] . . . from and against any and all . . . costs . . . and expenses . . . based upon or resulting from . . . (b) any alleged or actual defect in any of the Merchandise . . . [and] (d) breach by [Soleus] of any representations, warranties or covenants[.]" Jt. Stip. ¶ 14; P-9. With that in mind, I consider Soleus's objections to QVC's request to revise the judgment to

---

[5] Soleus also specifically objects to three billed costs attributed to Mr. Cawley: the first from April 28, 2008 for $103.74, the second from April 30, 2008 for $224.38, and the third, from May 14, 2008 for $185.61. Dkt. No. 113 at p. 18. These costs appear to be for Westlaw research sessions on April 3, April 4, and April 17, 2008. See Dkt. No. 105 at Ex. C. Because QVC has not provided a specific response to Soleus's objection to these costs and because they appear to be related to Mr. Cawley's insufficiently detailed time entries, I will exclude $513.73 from QVC's award of costs.

include an award of costs and expenses, including expert witness fees, paid to Saul Ewing.

### A. QVC's Experts

Arguing inadequate documentation, Soleus objects to bills seeking amounts for "SEA, Ltd.," for "Economatrix Research," for "[c]osts relating to deposition appearances of Dr. Swanson and Professor Fuentes," and for an invoice for "Dr. Swanson's review of file and analysis to prepare for possible court testimony." Dkt. No. 113 at p. 18-19. QVC responds that the entries that Soleus challenges are for payments to their experts Randall Bills of SEA, Ltd., and Dr. Swanson and Professor Fuentes of Economatrix. Dkt. No. 114 at ECF p. 11. Because the costs for QVC's experts were reasonably incurred and clearly arose out of Soleus's breach of its obligations under the Purchase Orders, I decline to exclude these amounts from QVC's award of costs.

### B. Telephone, Telecopier and Electronic Research

Soleus also objects that certain expenses QVC seeks to recover as costs are more properly considered as part of non-billable law firm overhead. See Dkt. No. 113 at p. 19. Soleus specifically objects to certain bills for telephone calls and telecopier costs, asking that I exclude from QVC's award $59.55 for telephone calls and $6.00 for telecopier charges. Id. at p. 19-20. Soleus also specifically objects to certain Westlaw research costs, arguing that "Westlaw research is part of overhead and should not be compensated." Id. at p. 20. In its opposition memorandum, Soleus specifically objects to $2,171.63 in Westlaw research costs billed by Ms. Kline. Id. I note that Soleus's specific objections do not encompass all of the telephone, telecopier or electronic research costs that QVC's attorneys billed to QVC. QVC responds to Soleus's objections generally, arguing that "[t]his Court . . . has allowed such costs as part of reasonable and recoverable attorney fees." Dkt. No. 114 at ECF p. 11.

Considering the broad language in the Purchase Orders imposing liability on Soleus for costs resulting from defective merchandise or from Soleus's breach of any warranties, I will allow QVC's requests for the objected-to telephone, telecopier and legal research charges. Saul Ewing routinely billed these items to QVC and Soleus has not shown that the identified costs were unrelated or unnecessary to the litigation of QVC's breach of contract claims.

### C. Meals and Cab Fare

I decline, however, to allow QVC's request for costs for certain meals, as QVC has not provided an explanation as to why these meals were necessary to its prosecution of its breach of contract claims. See Dkt. No. 113 at p. 20 (identifying bills for "Meals" for $15.00 on July 6, 2009, $14.73 on August 24, 2009, and $30.15 on January 17, 2012 and for "Lunch" for $15.05 on March 24, 2011, for a total amount of $74.93). I also decline to allow QVC's requested cost for a June 17, 2009 bill for $29.97 for "Cab Fare for associate working late." Id. QVC has not explained why this cost was reasonable or necessary to its claims for breach of contract.

### D. Revised Costs

I will therefore amend the judgment to award QVC $157,811.99 for its costs and expenses, including expert witness fees paid to Saul Ewing (i.e., QVC's requested $158,491.72 in costs and expenses less $61.00 for Mr. Metz's parking at trial, $513.73 for Mr. Cawley's Westlaw research, $74.93 for meals, and $29.97 in cab fare).

## II. Prejudgment Interest

Because I found that Soleus breached its obligations under the Purchase Orders with respect to the Heaters and the Shipped and Unshipped Other Merchandise, I found that Soleus is liable to QVC for prejudgment interest with respect to QVC's damages. In its motion, QVC seeks "$415,486.57 in prejudgment interest for QVC's Heater related damages" and "$43,783.21

-14-

in prejudgment interest for QVC's damages related to Other Merchandise." Dkt. No. 114 at ECF p. 2. Soleus does not dispute or challenge the prejudgment interest calculation set forth in QVC's motion. Accordingly, I will amend the judgment to include the requested prejudgment interest for the Heater-Related Damages and for the damages relating to the Other Merchandise.

An appropriate Order follows.